UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 14–CV–21249–HUCK/OTAZO-REYES

ELISA GARCIA, individually and
on behalf of all others similarly situated,

      Plaintiff,

vs.

CLARINS USA, INC., CLARINS INC.,
CLARINS NORTH AMERICA, INC.,
CLARINS GROUP NORTH AMERICA, INC.,
CLARINS SA, and CLARINS PARIS,

      Defendants.
_____/

## ORDER ON DEFENDANTS' MOTION TO DISMISS
## AND MOTION TO STRIKE CLASS ALLEGATIONS

THIS MATTER is before the Court on Defendants Clarins USA, Inc., Clarins Inc., Clarins North America, Inc., Clarins Group North America, Inc., Clarins SA, and Clarins Paris's (collectively "Defendants") Motion to Dismiss Plaintiff's Complaint and to Strike the Class Allegations Therein [D.E. No. 12], filed June 6, 2014. On June 23, 2014, Plaintiff Elisa Garcia, individually and on behalf of all others similarly situated, filed a Response to Defendants' Motions [D.E. No. 13].[1] On July 3, 2014, Defendants filed their Reply [D.E. No. 14]. Defendants ask the Court to strike the class allegations and dismiss all counts of the Complaint.

For the reasons discussed below in greater detail, the Court dismisses Plaintiff's claims with respect to the Clarins products she did not purchase because she cannot allege she suffered

---

[1] Plaintiff's Response notes that "[Defendants'] counsel offered to provide Plaintiff with information upon which to determine whether one or more of the Clarins entities should be dismissed." Resp. at 7, n.9. Plaintiff agreed to dismiss "Clarins, Inc." based on Defendants' counsel's representation that Clarins, Inc. was dissolved in 1983. *Id.* Plaintiff has not filed a notice of dismissal as to this Defendant.

1

an injury in fact as to those products and, therefore, lacks standing as to products other than those she purchased. Defendants' Motion to Strike the Class Allegations is DENIED because the question of class certification is better left for a motion to certify.

Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. As to Count I for unjust enrichment, the motion is DENIED because Plaintiff has alleged this claim in the alternative and has not yet proven an express contract. As to Count II for breach of express warranty, the motion is GRANTED because Plaintiff failed to give notice to Defendants of the alleged breach as required by Florida law. Finally, as to Count III for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Defendants' motion is DENIED because Plaintiff alleges more than a lack of substantiation, sufficiently alleges her claim under both FRCP 8(a) and 9(b), and does not improperly group Defendants in the Complaint.

## I. BACKGROUND

### A. The Named Plaintiff's Experience

Plaintiff purchased two Clarins products for $90 each at Macy's in the Dadeland Mall: Vital Light Night Revitalizing Anti-Ageing Cream and Body Lift Cellulite Control. Compl. ¶¶ 55, 69. Each of those products is part of the Clarins product lines: the Vital Light Collection (which includes 6 products) and the Body Lift Collection (which includes at least 2 products) (together, the "Beauty-Enhancing Creams"). *Id.* at ¶¶ 55, 61. Defendants allegedly market the Vital Light Collection products as "def[ying] the signs of aging" by reducing dark spots, dullness, and wrinkles, *id.* ¶ 56, and the Body Lift Collection products as firming, sliming, and reducing cellulite, *id.* ¶ 61. Plaintiff does not specifically state that she actually used the products, but does state that the products she purchased did not "provide the promised results." *Id.* ¶ 91. Plaintiff also states that that "no ingredient or combination of ingredients in the Vital

2

Light products (or the Body Lift products) can provide these promised benefits . . . ." *Id.* ¶¶ 58, 60, 64–68.

### B. Alleged False or Misleading Advertising

With respect to the two Clarins collections, Plaintiff alleges that Defendants make "specific efficacy promises based on purported scientific research and new discoveries of specific ingredients that deceive and mislead consumers into believing that the Beauty-Enhancing Creams they are purchasing will provide the promised and unique results." Compl. ¶ 11. Plaintiff claims Defendants' advertising includes misleading and deceptive references to "scientific sounding" terms, such as "clinical tests" or "consumer tests." *Id.* ¶ 33. Plaintiff pleads on information and belief that those tests include, but are not limited to,

> (1) studies with too few participants to yield results that are scientifically or statistically significant . . . (2) studies or consumer tests that are specifically designed to yield the desired results, or (3) tests where participants are cherry picked and/or where results are selectively determined such that [Defendants are] able to manipulate the results to support the purported benefits of the Beauty-Enhancing Creams for use in its advertising materials.

*Id.* ¶ 35.

Plaintiff claims Defendants' false marketing campaign includes dissemination of deceptive advertising through the Internet, television, print, and in-person demonstrations by Clarins-trained sales people. *Id.* ¶ 39. Plaintiff lists several general efficacy statements that Defendants allegedly made—often not explicitly stating whether she actually heard or saw these statements when she purchased the products. However, Plaintiff states, at least in some instances, the specific misleading statements that formed the basis for her purchases. *Id.* ¶¶ 55, 69.

### C. Class Allegations

On April 8, 2014, Plaintiff sued Defendants, alleging a class action based on a nationwide "Class" and a "Florida Subclass." *Id.* ¶¶ 94–95. Plaintiff defines the Class as "[a]ll purchasers of at least one of the Beauty-Enhancing Creams in the United States from date of product launch to the present (the 'Class Period')," with certain exclusions. *Id.* ¶ 94. She describes the Florida Subclass as "all members of the Class who purchased Beauty-Enhancing Creams in Florida." *Id.* ¶ 95. Plaintiff's Complaint alleges three counts: Count I) unjust enrichment; Count II) breach of express warranty; and Count III) violation of FDUTPA. *Id.* ¶¶ 102, 108, 115.

## II. DISCUSSION

### A. Standing

Defendants, citing *Toback v. GNC Holdings, Inc.*, 13-80526-CIV, 2013 WL 5206103 (S.D. Fla. Sept. 13, 2013) and *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266 (11th Cir. 2000), argue that Plaintiff lacks standing to bring individual claims or to serve as a class representative with respect to Clarins products she did not purchase. Mot. at 12. Defendants contend that Plaintiff must allege her injury for which this lawsuit can provide redress. *Id.* Because Plaintiff only purchased only two of the Clarins products, Defendants argue that she cannot claim an injury from Defendants' other products and, therefore, lacks standing as to those products. *Id.*

Citing *Fitzpatrick v. Gen. Mills, Inc.*, 263 F.R.D. 687 (S.D. Fla. 2010) *vacated*, 635 F.3d 1279 (11th Cir. 2011), Plaintiff responds that she has standing to sue for the full line of products in the Vital Light Collection and Body Lift Collection because Defendants' efficacy statements about the products in each collection were uniformly misleading. Resp. at 19. Plaintiff contends that the standing analysis should focus on the uniformity of the efficacy claims Defendants made

4

for the whole of each collection. *Id.* Additionally, Plaintiff alleges that she and every putative class member suffered the same economic injury from their purchases. *Id.*

Defendants reply that unlike in *Fitzpatrick*, where the plaintiff asserted claims with respect to different yogurt flavors (only some of which she purchased), the products in the instant case have different formulas, ingredients, and purposes, and Plaintiff does not allege otherwise. Reply at 7. Defendants contend that, as in *Toback*, Plaintiff cannot establish an injury in fact, and therefore Article III standing, with respect to any product other than the ones she purchased. *Id.* at 7–8.

"The question of standing is not subject to waiver . . . . 'The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines.'" *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 877–78 (11th Cir. 2000) (quoting *United States v. Hays*, 515 U.S. 737, 742 (1995)). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The party invoking federal jurisdiction bears the burden of establishing standing. *Id.* at 561. To establish standing: 1) Plaintiff must have suffered an "injury in fact"; 2) Plaintiff must show a causal connection between the injury and the conduct complained of; and 3) it must be "likely," as opposed to merely "speculative," that Plaintiff's injury will be "redressed by a favorable decision." *Id.* at 560–61; *see also Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) ("If he cannot show personal injury, then no [A]rticle III case or controversy exists, and a federal court is powerless to hear his grievance. This individual injury requirement is not met by alleging 'that injury has been suffered by other, unidentified members of the class to which [the plaintiff] belong[s] and which [he] purport[s] to represent.'") (internal citations omitted).

In the instant case, Plaintiff lacks standing with respect to the products she did not purchase because she cannot allege an injury in fact. Although Plaintiff argues that the focus should be on the "uniformity of the efficacy claims" that Defendants made about each collection, binding precedent requires that Plaintiff show she suffered an injury in fact before establishing standing. Plaintiff has not done so here.

Similarly, in *Toback*, the plaintiff sued defendants under FDUTPA for the sale of the "TriFlex" line of products, which allegedly helped repair and preserve cartilage. *Toback*, 2013 WL 5206103, at *1. However, the plaintiff purchased only one product from the TriFlex line of products, the TriFlex Vitapak. *Id.* In granting the defendants' motion to dismiss, the court held that plaintiff could not establish Article III standing for any product other than the TriFlex Vitapak. *Id.* at 5. The court reasoned that Article III standing requires that a plaintiff show he suffered an injury, and because plaintiff did not suffer injuries from the products he did not purchase, he lacked standing as to those products. *Id.*

In *Toback*, the court mentioned that some courts make a determination on standing at the class certification stage. *Id.* at 4. However, the court explained that because the Eleventh Circuit requires at least one named plaintiff to establish Article III standing "for each class subclaim," deferring the determination of standing to the class certification stage would "yield no different result." *Id.* In the instant case, deferring ruling on Plaintiff's standing until the class certification stage also would "yield no different result." Plaintiff's standing is limited to claims relating to Vital Light Night Revitalizing Anti-Ageing Cream and Body Lift Cellulite Control products because Plaintiff did not purchase the other products and cannot allege an injury in fact as to those products.

## B. Motion to Strike the Class Allegations

Usually, the Court will address class certification upon a motion to certify the class under Federal Rule of Civil Procedure 23 or *sua sponte* based on its "independent obligation to decide whether an action was properly brought as a class action, even where . . . neither party moves for a ruling on class certification." *Martinez-Mendoza v. Champion Intern. Corp.*, 340 F.3d 1200, 1216 n.37 (11th Cir. 2003) (quotations and citations omitted). However, Defendants move to strike the class allegations pursuant to Federal Rule of Civil Procedure 12(f). Mot. at 13.

Rule 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Courts consider striking a pleading to be a 'drastic remedy' and generally view motions to strike 'with disfavor.' A motion to strike will therefore usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Gill-Samuel v. Nova Biomedical Corp.*, 298 F.R.D. 693, 699 (S.D. Fla. 2014) (internal citations omitted); *see Rosen v. J.M. Auto Inc.*, 07-61234-CIV, 2008 WL 9901501, at *6 (S.D. Fla. Mar. 6, 2008); *In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d 1326, 1340 (S.D. Fla. 1999).

Motions to strike class allegations are uncommon and disfavored in this circuit. In *In re Horizon Organic Milk Plus*, defendant moved to strike the class allegations in plaintiff's complaint. *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1351 (S.D. Fla. 2013). The Court held that "[w]hile class allegations may be stricken at the pleading stage, motions to strike class allegations are generally disfavored because 'a motion for class certification is a more appropriate vehicle.'" *Id.* (citations omitted). Since the plaintiff had not filed a motion for class certification, the court did not find it appropriate to make a determination regarding class certification at that time. *Id.* at 1352.

The Court agrees with the reasoning in *In re Horizon Organic Milk Plus*. Because Plaintiff has not yet filed a motion for class certification, the Court will not make a determination on class certification at this time. Defendants' motion to strike is, therefore, DENIED.

### C. Motion to Dismiss the Complaint

#### i. Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all factual allegations in the complaint are considered true and are construed in the light most favorable to the plaintiff. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). Under Rule 8, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief," and "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). "[T]he statement need only 'give the defendant fair notice of what the . . . claim is and the ground upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). However, the plaintiff must present "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Bell v. J.B. Hunt Transp., Inc.*, 427 Fed. App'x 705, 707 (11th Cir. 2011) (per curiam). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

#### ii. Count I: Unjust Enrichment

Citing *American Honda Motor Company, Inc. v. Motorcycle Information Network, Inc.*, 390 F. Supp. 2d 1170 (M.D. Fla. 2005), Defendants contend that, under Florida law, unjust

enrichment is an equitable remedy and not available when an adequate legal remedy exists. Mot. at 8. Defendants argue that Plaintiff's unjust enrichment claim should be dismissed because Plaintiff has an adequate remedy at law. *Id.* at 7–8. Defendants state that Plaintiff seeks to recover for unjust enrichment on the same facts that form the basis for her legal claims for breach of express warranty and violation of FDUTPA. *Id.* at 8. Moreover, Defendants argue that Plaintiff should not be permitted to plead in the alternative. *Id.*

Plaintiff responds that Rule 8(d) expressly allows for alternative statements of claims and the pleading of inconsistent claims. Resp. at 11. Plaintiff cites *State Farm Mutual Automobile Insurance Company v. Physicians Injury Care Center, Inc.*, arguing that although equitable remedies are generally not available when adequate remedies at law exist, a claim for unjust enrichment is an exception to that rule. *See State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 Fed. App'x 714 (11th Cir. 2011) (vacated in part on other grounds by *State Farm Mut. Auto. Ins. Co. v. Williams*, 563 Fed. App'x 665 (11th Cir. 2014)); Resp. at 12. Further, Plaintiff contends that she has not yet proven her legal claim, such that her equitable claim must yield. *Id.* Finally, because Plaintiff sufficiently alleges the elements of an unjust enrichment claim in her Complaint, she argues that the claim should not be dismissed. *Id.*

Defendants reply that because a party cannot recover under a theory of unjust enrichment when there is an express contract between the parties—and Plaintiff alleges an express contract/breach of express warranty through her purchase of the products—Plaintiff's unjust enrichment claim should be dismissed. Reply at 4.

Under Florida law, a plaintiff must allege the following elements to sustain a claim for unjust enrichment: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be

9

inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Florida Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)). While "[v]arious courts disagree as to whether the existence of an adequate legal remedy precludes a plaintiff from pleading a cause of action for unjust enrichment," *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1268 (N.D. Fla. 2012), the Eleventh Circuit has resolved this issue. In *State Farm*, the defendants argued on appeal that that they were entitled to judgment as a matter of law on State Farm's claim for unjust enrichment because State Farm had adequate remedies at law. *State Farm*, 427 Fed. App'x at 722. The court held that although "[i]t is generally true that equitable remedies are not available under Florida law when adequate legal remedies exist . . . that rule does not apply to unjust enrichment claims." *Id.* (citing *Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. 5th DCA 1998)). "Until an express contract is ***proven***, a motion to dismiss a claim for . . . unjust enrichment . . . is premature." *Williams*, 725 So. 2d at 400 (emphasis added); *Real Estate Value Co., Inc. v. Carnival Corp.*, 92 So. 3d 255, 263 (Fla. 3rd DCA 2012), *reh'g denied* (July 19, 2012) ("Under Florida law, a party may simultaneously allege the existence of an express contract and alternatively plead a claim for unjust enrichment. Of course, upon a showing that an express contract concerning the same subject matter exists, the unjust enrichment claim necessarily fails.") (citing *Hazen v. Cobb*, 96 Fla. 151, 117 So. 853, 857–58 (1928)).

In the instant case, because Plaintiff may plead in the alternative and no express contract has been proven, Defendants' Motion to Dismiss Plaintiff's unjust enrichment claim is DENIED.

        iii.  <u>Count II: Breach of Express Warranty</u>

Under Florida law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express

10

warranty that the goods shall conform to the affirmation or promise. . . ." Fla. Stat. § 672.313; *see Thursby v. Reynolds Metals Co.*, 466 So. 2d 245, 249–50 (Fla. 1st DCA 1984). "[A]n express warranty is generally considered to arise only where the seller asserts a fact of which the buyer is ignorant prior to the beginning of the transaction, and on which the buyer justifiably relies as part of the 'basis of the bargain.'" *Id.* at 250 (citations omitted). "To plead a cause of action for breach of express warranties under the Florida Uniform Commercial Code, a complaint must allege: (1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to the seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of express warranty." *Jovine v. Abbott Laboratories, Inc.*, 795 F. Supp. 2d 1331, 1340 (S.D. Fla. 2011).

Defendants move to dismiss Plaintiff's claim for breach of express warranty, arguing that Plaintiff: 1) fails to identify the alleged representations she received or relied upon; 2) fails to allege she suffered any injury due to the breach of warranty; 3) fails to notify Defendants of the breach; 4) is not in privity with Defendants because she did not purchase the products directly from a defendant warrantor. Mot. at 6–7.

Plaintiff responds that she alleged numerous statements by Defendants that the products Plaintiff purchased would perform in a specific way and that those statements formed the basis of the bargain. Resp. at 8–9. Additionally, Plaintiff contends that because the notice requirement's purpose is to allow a defendant to remedy the defects and there was no ability for Defendants to cure any breach of warranty in this case, notice would have been futile. Resp. at 10. Plaintiff further contends that Defendants suffered no prejudice from the failure to give notice, and therefore, the claim should not be dismissed on that basis. *Id.* Plaintiff cites to non-binding case law where the Complaint itself served as sufficient notice of the breach. *Id.* at 10–

11

11. With respect to privity, Plaintiff responded that Plaintiff purchased "Clarins products at the Clarins counter in Macy's, which is staffed and operated by Clarins' employees or agents." *Id.* at 11.

Defendants reply that Plaintiff failed to specifically identify which statements Plaintiff actually saw and relied upon when she purchased the products. Reply at 1. With respect to notice, Defendants contend that 1) the plain language of the statute does not provide an exception to the notice requirement; 2) Plaintiff cites to no Florida law to support her lack of prejudice argument; and 3) Plaintiff cites no Florida law to support her argument that the Complaint serves as sufficient notice, Florida courts have implicitly or explicitly rejected the Complaint as notice argument, and if the Complaint alone were sufficient notice, no express warranty claim would ever be dismissed for lack of notice. Reply at 2–3. Finally, with respect to privity, Defendants argue that Plaintiff fails to allege she purchased the products from "Clarins' employees or agents." *Id.* at 3.

The Court grants Defendants' motion to dismiss the claim for breach of express warranty because Plaintiff fails to allege that she gave notice to Defendants. Florida law requires Plaintiff to give notice of the breach to the seller. Fla. Stat. § 672.607(3)(a) ("The buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."); *Jovine*, 795 F. Supp. 2d at 1340. Plaintiff does not allege that she did so here.

Acknowledging her lack of notice, Plaintiff invites the Court to find an exception to Florida law because Defendants would not have been able to cure the alleged defects even if Plaintiff notified Defendants. The Court declines this invitation. Courts have no authority to create exceptions to clearly written statutes. *Corona Coal Co. v. United States*, 263 U.S. 537,

12

540 (1924) ("But the words of the statute are plain, with nothing in the context to make their meaning doubtful; no room is left for construction, and we are not at liberty to add an exception in order to remove apparent hardship in particular cases."); *see also Florida Dep't of Children & Family Servs. v. P.E.*, 14 So. 3d 228, 234 (Fla. 2009) ("Where the statute's language is clear or unambiguous, courts need not employ principles of statutory construction to determine and effectuate legislative intent."). "Where the legislature has made no exception to the positive terms of a statute, the presumption is that it intended to make none." 73 Am. Jur. 2d *Statutes* § 204. Regardless of whether Defendants suffered prejudice, Fla. Stat. § 672.607(3)(a) expressly requires Plaintiff to notify Defendants of the breach within a reasonable time.

Plaintiff's additional argument that the Complaint served as sufficient notice of the breach is likewise rejected, given its lack of legal support. *See Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 625 (S.D. Fla. 2008) ("[T]he Court overrules Plaintiff's objection, which is unsupported by law, that the complaint . . . serve[s] as adequate notice to Defendant that the [product] did not conform to its alleged express warranty and that notice is therefore a 'single question applicable to the entire putative class.'") (citation omitted). Accordingly, Defendants' Motion to Dismiss Plaintiff's breach of express warranty claim is GRANTED.

####  iv. Count III: Violation of FDUTPA

Defendants move to dismiss Count III of the Complaint alleging a violation of FDUTPA on three grounds: 1) this claim is actually a claim for lack of substantiation; 2) Plaintiff fails to plead with particularity as required by Federal Rule of Civil Procedure 9(b); and 3) Plaintiff improperly groups Defendants together in the Complaint, failing to inform each Defendant as to the specific facts alleged against it. Mot. at 8–12.

a. *Plaintiff alleges more than a lack of substantiation*

Defendants contend that instead of alleging that Defendants lacked a scientific basis to make their claims about the Clarins products, Plaintiff merely takes issue with the quality and conclusions of Defendants' science, which essentially converts her FDUTPA claim into a lack of substantiation claim. Mot. at 8. Despite the general references to clinical studies or tests, Plaintiff fails to allege particularized facts showing that Defendants' marketing materials are false. *Id.* at 9. Defendants further argue that Plaintiff's general allegations referencing the Mayo Clinic and the National Institute of Health ("NIH") studies do not specifically relate to Clarins products or the ingredients contained in Clarins products. *Id.* Therefore, Defendants contend that Plaintiff's claim amounts to a claim that Defendants cannot substantiate their advertising. *Id.* Because some courts hold that a mere lack of substantiation claim is not a viable claim, Defendants argue that Plaintiff's FDUTPA claim should be dismissed. *Id.*

Plaintiff responds that Defendants mischaracterize Plaintiff's claim. Resp. at 5–6. Plaintiff argues that rather than asserting that generic, non-technical marketing claims making no reference to clinical or scientific studies are unsubstantiated, she affirmatively alleges that Defendants' claims referring to clinical and scientific studies are positively false or misleading. *Id.* at 6. The Complaint alleges that the products "do not contain any ingredient or combination of ingredients that could produce [Defendants'] claimed efficacy results, because it is impossible that a non-prescription-strength, over-the-counter cosmetic cream, applied topically, will lift, firm, and tone skin or reduce or prevent cellulite." *Id.* Plaintiff cites to the Mayo Clinic and the NIH to support her allegations that topical creams lack the ability to reduce or remove wrinkles and cellulite. *Id.* Finally, Plaintiff argues that even if her claim were based on a lack of

substantiation, it would not be fatal to her claim, as a lack of substantiation is not necessarily precluded under FDUTPA. *Id.* at 6, n.7.

Defendants reply that the Complaint amounts to a general claim that Defendants' advertising lacked substantiation because Plaintiff cites no specific study regarding Defendants' products. Reply at 4. Defendants argue that the cases Plaintiff cites are inapposite because in those cases, the plaintiff provided studies specifically concerning the ingredients in the products at issue. *Id.* at 5. Defendants contends that even though lack of substantiation claims are not necessarily precluded under Florida law, the Court should decline to allow such claims because they are based on a "plaintiff's own uninvestigated belief that a company's marketing statements are false." *Id.*

Under Florida law, it is not clear whether a lack of substantiation claim is available under FDUTPA. *See In re Horizon Organic Milk Plus*, 955 F. Supp. 2d at 1344, n.12 ("Defendant has not cited to, and the Court has not found, any case that states that consumer claims for lack of scientific substantiation are not cognizable under the consumer fraud [statute] of . . . Florida."). However, it is unnecessary to reach that question because Plaintiff's claim goes further than a mere allegation that Defendants failed to substantiate their representations with scientific evidence.

Here, for example, Plaintiff's Complaint quotes the Mayo Clinic stating that "[c]ellulite creams . . . contain a variety of ingredients . . . and are often marketed as the cure for cellulite. But no studies show that these creams offer any improvement." Compl. ¶ 67. Additionally, Plaintiff quotes the NIH explaining that "[n]o existing treatments including . . . creams . . . has been shown to get rid of cellulite once you have it." *Id.* ¶ 68. Then, Plaintiff alleges that, based on these and other statements from the Mayo Clinic and the NIH, "no ingredient or combination

of ingredients in the Vital Light products (or the Body lift products) can provide these promised benefits, otherwise the products should be regulated as drugs, because the efficacy claims Clarins makes imply that the products are intended to affect the structure or function of the human body, rendering them as drugs under the Federal Food, Drug, and Cosmetic Act, which Clarins has failed to do." *Id.* ¶ 58.

In *Toback*, the plaintiff affirmatively alleged that studies have shown that glucosamine and chondroitin, two ingredients of the TriFlex products, were ineffective in promoting joint health. *Toback*, 2013 WL 5206103, at *3. In the instant case, Plaintiff cites the Mayo Clinic's and NIH's studies explaining that treatments, like those which Clarins products provide, do not reduce or remove cellulite—which directly contradicts Defendants' claims referring to clinical and scientific studies. Although the statements by the Mayo Clinic and the NIH do not specifically mention Clarins products or their ingredients, while the studies in *Toback* involved the ingredients in defendants' products, those statements are sufficient at this stage in the proceedings to encompass Clarins products. Therefore, they are sufficient to sustain Plaintiff's allegation that Defendants' claims are positively false or misleading. There is more here than just Plaintiff's own uninvestigated belief that Defendants' marketing statements are false. Viewing all factual allegations in the complaint as true and construing those facts in the light most favorable to Plaintiff, the Court will not dismiss the FDUTPA claim on this ground.

        b. *Pleading under Rule 9(b)*

Next, Defendants argue that Plaintiff's FDUTPA claim should be dismissed for failure to plead with particularity, under the heightened pleading standard of Rule 9(b), that the Defendants' marketing claims are "false." Mot. at 11. Moreover, Defendants contend that Plaintiff does not identify which marketing statements she saw or heard. *Id.*

Plaintiff responds that the FDUTPA claim need only satisfy the requirements of Rule 8(a), which it does. Resp. at 4. Moreover, Plaintiff argues that even if Rule 9(b) were the applicable pleading standard, Plaintiff has met that standard by pleading that 1) she was exposed to Defendants' material representations about the products; 2) she purchased the products based on those misrepresentations; and 3) she suffered economic damage when the products failed to perform as promised. Resp. at 5, n.6. Plaintiff argues that the allegations fully apprise Defendants of the claims against them. *Id.*

Defendants reply that although courts are split on whether FDUTPA claims need to be pled under a heightened pleading standard, the distinction courts raise focuses on whether the FDUTPA claims are based on fraud or merely unfair and deceptive conduct. Reply at 6. Defendants argue that, even if Plaintiff need not meet the heightened pleading standard, her claim still fails because it fails to allege sufficient details. *Id.* at 6–7.

To state a claim for FDUTPA, Plaintiff must allege: "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)). Courts throughout Florida are split on whether a claim under FDUTPA requires Plaintiff to plead with particularity under Rule 9(b). *Compare Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1354 (S.D. Fla. 2012) (holding that "Rule (9) is inapplicable to Plaintiff's FDUTPA claims), *and Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009) ("Because Rule 9(b) does not apply to FDUTPA claims, its requirements cannot serve as a basis to dismiss those claims."), *with Llado-Carreno v. Guidant Corp.*, 09-20971-CIV, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) ("The particularity requirement of Rule 9(b) applies to all claims that sound in fraud, regardless of whether those claims are grounded in state

17

or federal law."), *and Siever v. BWGaskets, Inc.*, 72 Fed. R. Serv. 3d 1109 (M.D. Fla. 2009) ("Rule 9(b) applies to FDUTPA claims that are 'grounded in fraud.'") (citation omitted).[2]

However, even if Plaintiff is required to plead with particularity under Rule 9(b), the Court does not dismiss Plaintiff's FDUTPA claim on these grounds. Plaintiff specifically alleges, in addition to a myriad of efficacy claims, that: 1) Plaintiff purchased the two Clarins products at the Macy's in the Dadeland Mall; 2) Plaintiff purchased these products based on Defendants' false and misleading statements, "including that the use of the 'internationally patent pending' product would firm and tone skin, restore deep luminosity, and held boost microcirculation to ensure waking to a healthy-looking and revitalized complexion"; 3) those statements were material and influenced Plaintiff's purchase decision; 4) Defendants' efficacy claims are misleading and deceptive because no ingredient or combination of ingredients within the two products can provide those benefits; and 5) Defendants' violation of FDUTPA directly and proximately caused Plaintiff and other Florida Subclass members to sustain substantial and ascertainable damages.

Plaintiff sufficiently pleads her FDUTPA claim under Rules 8 and 9, alleging 1) a deceptive act or unfair trade practice; 2) causation; and 3) actual damages. Defendants are correct that Plaintiff lists several general efficacy statements without stating whether she actually heard or saw these statements. However, Defendants are not correct that Plaintiff completely

---

[2] Courts holding that Rule 9(b) is inapplicable to FDUTPA claims explain that, under Florida law, "'[t]he plaintiff need not prove the elements of fraud to sustain an action under the statute.'" *State of Fla., Office of Atty. Gen., Dep't of Legal Affairs v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005) (quoting *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000)); *see also State, Office of Atty. Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. 1st DCA 2004) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue.").

18

fails to identify any marketing statements she saw or heard. At least in some instances, Plaintiff alleges that specific misleading statements (which she then states) formed the basis for her purchase. *See* Compl. ¶¶ 55, 69. Accordingly, the Court will not dismiss Plaintiff's FDUTPA claim on this ground.

### c. *Plaintiff does not improperly group Defendants*

Finally, Defendants contend that Plaintiff improperly grouped six Clarins Defendants, failing to inform each Clarins Defendant as to the specific facts alleged against it. Mot. at 11–12. Plaintiff needed to provide detail about the alleged wrongful conduct of each Defendant. *Id.* Plaintiff responds that Defendants misconstrue the cases supporting their position. Resp. at 7. Unlike the cases cited by Defendants, where the multiple parties were totally unrelated, Plaintiff alleges that Defendants here are all "playing for the same team" and Clarins presents itself as a single business unit. *Id.* Without discovery it would be virtually impossible to know precisely which Clarins entity is responsible for what aspect of the Beauty-Enhancing Creams. *Id.* In any event, Plaintiff contends that the Complaint provides sufficient details to apprise Defendants of the nature of the claims against them. *Id.* Defendant replies that the defendants in the cases cited were not "totally unrelated" but instead related business entities named in a single complaint, as Defendants are here. Reply at 7.

As in *Toback*, though Plaintiff refers to the Defendants collectively, she alleged sufficient detail to put them on notice of her claims. *See Toback*, 2013 WL 5206103, at *2 (rejecting defendants' argument that Plaintiff's reference to defendants GNC Holdings, Inc., GNC Corporation, General Nutrition Corporation, and General Nutrition Centers, Inc., collectively as "GNC" was an improper group pleading). Therefore, the Court will not dismiss the FDUTPA claim on this ground. Defendants' Motion to Dismiss Plaintiff's FDUTPA claim is DENIED.

## III. CONCLUSION

For the reasons expressed above, Defendants' Motion to Strike the Class Allegations is DENIED and Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. Plaintiff may amend her breach of warranty claim on or before September 16, 2014.

DONE and ORDERED in Miami, Florida, on September 4, 2014.

Paul C. Huck
United States District Judge