UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 14–CV–21249–HUCK/OTAZO-REYES

ELISA GARCIA, individually and
on behalf of all others similarly situated,

        Plaintiff,

vs.

CLARINS USA, INC., CLARINS INC.,
CLARINS NORTH AMERICA, INC.,
CLARINS GROUP NORTH AMERICA, INC.,
CLARINS SA, and CLARINS PARIS,

        Defendants.

**CLOSED
CIVIL
CASE**

_____/

## ORDER DENYING MOTION

THIS CAUSE comes before the Court upon Plaintiff's Motion for Class Certification and Appointment of Class Counsel ("Motion") [D.E. 101][1], filed April 11, 2016. The Court has considered the Motion, Defendants' Response (D.E. 110), Plaintiff's Reply (D.E. 124), Defendants' Sur-Reply (D.E. 123), Plaintiff's Notice of Supplemental Authority (D.E. 118), and the record. The Court is duly advised.

### I.     BACKGROUND

This Motion arises out of Elisa Garcia's ("Plaintiff['s]") alleged purchase of Body Lift Cellulite Control ("Body Lift"). (D.E. 1 ¶¶ 55, 69). Plaintiff alleges she purchased Body Lift in January, 2013, in the Macy's at Dadeland Mall, for approximately $90. Plaintiff states she purchased Body Lift with cash and retained no proof of purchase. (D.E. 115-5 at 19–20).

Defendants market Body Lift as a treatment for "Cellulite Control" which "firms"; "[t]argets early & stubborn cellulite"; "helps streamline the silhouette's appearance and visibly

---

[1] This Motion is redacted. Docket entry 109 is the unredacted version.

reduces the look of cellulite"; "[v]isibly enhances skin firmness"; "[s]moothes [*sic*] the look of early and stubborn cellulite, the silhouette's appearance is reshaped"; and "[m]inimizes the look of even the most stubborn cellulite." (D.E. 109-1 at 2). These claims are all on Body Lift's packaging. (*See* D.E. 109-1 at 2). Defendants have also advertised Body Lift on its website as "the first slimming product" that "breaks the circle of cellulite" and that "prevents and corrects the appearance of cellulite at every level." (D.E. 1 ¶ 71(a)–(c) (displaying images from Clarins's website)). On Defendants' website, Clarins further claims that its ingredients can "slow down the multiplication of Progenitor Cells . . . and . . . delay their transformation into fat cells causing existing cellulite to look visibly reduced and to slow the appearance of new cellulite." (D.E. 1 ¶ 71(h)–(t) (displaying images from Clarins's website)).

Plaintiff alleges Defendants' efficacy claims are false, deceptive, and misleading. (D.E. 1 ¶ 4). Plaintiff contends, and provides expert testimony to support her contentions, that no ingredient or combination of ingredients in the Body Lift products can provide these promised benefits.  (*See* D.E. 109-7 at 27–40, 43). Plaintiff's expert witness stated, "No consumers will realize the stated cellulite efficacy as set forth in the Cellulite Label Claims. Indeed, none of the Cellulite Label Claims are true because the product cannot cause structural, inflammatory or vascular changes that would theoretically have the potential to influence the underlying pathology . . . ." (D.E. 109-7 at 43).

Plaintiff now moves for certification of a Florida Class, alleging violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and a claim for unjust enrichment; Plaintiff also moves for certification of a National Class, alleging a claim for unjust enrichment. The jurisdictional basis of this action is the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

## II.     LEGAL STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). The party seeking class certification bears the burden of establishing the requirements of Rule 23. *See Carriuolo v. Gen. Motors Co.*, --- F.3d ----, 2016 WL 2870025, at *1 (11th Cir. May 17, 2016). Such party must establish that all of Rule 23(a)'s prerequisites have been satisfied as well as the requirements of at least one subsection of Rule 23(b). *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009).

Rule 23(a) "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart*, 564 U.S. at 349. Rule 23(a)'s four express prerequisites are: (1) "the class is so numerous that joinder of all members is impracticable" ("numerosity"); (2) "there are questions of law or fact common to the class" ("commonality"); (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" ("typicality"); and (4) "the representative parties will fairly and adequately protect the interests of the class" ("adequacy of representation"). Fed. R. Civ. P. 23(a); *Vega*, 546 F.3d at 1265. Additionally, Rule 23(a) has an implicit prerequisite — ascertainability. *Karhu v. Vital Pharmaceuticals, Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015). Rule 23(b)(3), the subsection under which Plaintiff proceeds, requires both that common questions predominate over individual questions and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3).

Only after conducting a rigorous analysis and being satisfied that the requirements of Rule 23 have been met may a court certify a class. *Carriuolo*, 2016 WL 2870025, at *1. A court

3

ruling on a motion for class certification may consider the merits of a case, but only to the extent

the merits are "relevant to determining whether the Rule 23 prerequisites for class certification

are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, --- U.S. ----, 133 S. Ct. 1184, 1195

(2013).

### III.    ANALYSIS

Plaintiff moves for certification of two 23(b)(3) classes. Plaintiff seeks certification of a

"Florida Class" defined as

> consumers in the state of Florida who purchased Body Lift from the date of
> product launch (January 2013) to the present who meet at least one of the
> following criteria for purchase: (a) retained proof of purchase; (b) credit/debit
> card purchaser; (c) on-line purchaser; and/or (d) loyalty or reward member at the
> retail establishment where Body Lift was purchased.[2]

(for ease of reference, the Court refers to criteria (a)–(d) as "the class definitions' objective

criteria") (D.E. 109 at 3). Plaintiff also seeks certification of a "National Class" defined as

> "Named Plaintiff, and all other persons nationwide who purchased Body Lift from
> date of product launch (January 2013) to the present who meet at least one of the
> following criteria for purchase: (a) retained proof of purchase; (b) credit/debit
> card purchaser; (c) on-line purchaser; and/or (d) loyalty or rewards member at the
> retail establishment where Body Lift was purchased."

(D.E. 109 at 3). Plaintiff has excluded from these classes: "Defendants, parent, subsidiaries and

affiliates, their directors and officers and members of their immediate families, any federal, state,

or local governmental entities, any judicial officers presiding over this action and members of

---

[2] It appears Plaintiff unintentionally omitted herself from the Florida Class definition. Later in
the Motion, Plaintiff states, "The Florida and the Nationwide Classes are defined as Plaintiff
herself, and all other persons in the state of Florida or Nationwide who purchased Body Lift from
date of product launch (January 2013) to the present who meet at least one of the following
criteria . . . ." (D.E. 109, at 11). Plaintiff did include herself in the National Class definition. The
Court undertakes this analysis assuming Plaintiff intended to name herself in the Florida Class
definition, as she would not be a member of the Florida Class unless she did so.

their immediate families, and judicial staff and any juror assigned to this action." (D.E. 109 at 2, n.4).

As noted above, Plaintiff asserts her FDUTPA claim and unjust enrichment claim on behalf of the putative Florida Class, and asserts only her unjust enrichment claim on behalf of the putative National Class.

Defendants state Plaintiff "cannot meet any of the requirements of Rule 23." (D.E. 110 at 4). Defendants argue Plaintiff fails to establish she meets Rule 23(a)'s prerequisites of ascertainability, numerosity, commonality, and adequacy of representation. Defendants also argue Plaintiff fails to establish she meets Rule 23(b)(3)'s requirements of predominance and superiority. The Court addresses each of 23(a)'s requirements in turn.

## A. Rule 23(a)'s Prerequisites

### 1) Ascertainability

"Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is 'adequately defined and clearly ascertainable.'" *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)). A putative class is "not ascertainable unless the class definition contains objective criteria that allow for class members to be identified in an administratively feasible way." *Karhu v. Vital Pharma., Inc.,*, 621 F. App'x 945, 946 (11th Cir. 2015). "Identifying class members is administratively feasible when it is a 'manageable process that does not require much, if any, individual inquiry.'" *Id.* (quoting *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014)).

The class definitions posited by Plaintiff are not ascertainable for a host of reasons. As an initial and fundamental matter, the class definitions posited by Plaintiff are not objective because

Plaintiff has written herself into the class definitions. Such a run-around the objective criteria requirement cannot stand. Writing oneself into a class definition is about as subjective as a class definition can get. Plaintiff cannot be a member of the class where she does not meet the objective criteria set out in the proposed class definition.

As to the posited class definitions' objective criteria, Plaintiff proposes that individuals can be class members only if they meet at least one of four criteria: "(a) retained proof of purchase; (b) credit/debit card purchaser; (c) on-line purchaser; and/or (d) loyalty or rewards member at the retail establishment where Body Lift was purchased." These criteria are an attempt to make the class ascertainable by making class members identifiable in an administratively feasible way. The first and third criteria would make some putative class members identifiable in an administratively feasible way. As to the first criteria, proof of purchase is clear indication the product was purchased and the person possessing said proof should be a member of the class. As to the third criteria, Defendants admit Clarins has the requisite information to identify the purchasers of products sold through Clarins's website. (*See* D.E. 110 at 23 ("Other than information regarding its own website sales, Clarins has no records of the identities of individual consumers who purchase Clarins products at department stores or specialty stores.")). The Court analyzes the second and fourth criteria below, explaining why they fail to create an ascertainable class.

To support her argument that the proposed class definitions create ascertainable classes even with the second and fourth criteria, Plaintiff relies on affidavits of two Macy's employees, a Lord & Taylor employee, and a Sephora employee — providing information about only three

retailers.[3] These affidavits represent a small fraction of the retailers that sold Body Lift, as Plaintiff states Clarins sold Body Lift at fifteen national retail establishments. (*See* D.E. 109 at 11). As to the other twelve national retailers, Plaintiff has provided the Court with no evidence to assess whether they can provide necessary information regarding the putative class members' purchases. Because the Court cannot determine that putative class members who purchased Body Lift from these twelve retailers can be identified in an administratively feasible way, Plaintiff has not satisfied her burden of demonstrating ascertainability. As described below, even if limited to consumers who purchased Body Lift from the retailers for which Plaintiff has included declarations, the second and fourth criteria make the class unascertainable.

### a.   Credit/Debit Card Purchasers

With regard to the second criteria (credit/debit card purchaser) and the remaining three national retailers (Macy's, Lord & Taylor, and Sephora), the Court finds that Plaintiff has not carried its burden of demonstrating the class is ascertainable.

As to Macy's, Plaintiff directs the Court to paragraph 7 and paragraph 8 of the declarations of Jalovec and Teets, respectively. Jalovec's paragraph 7 concerns only customers that use Macy's proprietary credit card, and thus, sheds no light on use of a regular credit or debit card. (D.E. 109-8 at 2). Teets's paragraph 8 states,

---

[3] Plaintiff argues that if the Court does not find the class is ascertainable, Plaintiff should be allowed to take further discovery on this issue. (D.E. 109 at 11 n.8). Plaintiff states she was severely prejudiced by the Magistrate Judge's ruling quashing the Plaintiff's subpoenas issued to non-party retailers. (D.E. 109 at 11 n.8; 77 at 2). Yet, that very order (D.E. 77) states that if "any party or non-party require[s] further assistance with discovery disputes, they may bring those disputes to the undersigned's attention . . . ." If Plaintiff thought she had insufficient evidence allowing the Court to find the class was ascertainable, Plaintiff could have and should have moved the Court to allow further discovery. In any event, the Court will not allow further discovery as to ascertainability because such discovery would be futile. As discussed *infra*, the Court finds Plaintiff's claims are not typical of the putative classes' claims, and as such, must deny class certification.

> Macy's customer information management system regarding specific transactions, the products involved in those transactions, and the customers associated with those transactions reflects approximately the past three years of such transactions. Transactional information within the register processing system reflects approximately the past seven years of such transactions, while transactional information within MyClient reflects approximately the past eighteen months of such transactions.

(D.E. 109-8 ¶ 8). At first glance, it seems this information would be sufficient to identify customers that purchased Body Lift, but a full reading of Teets's declaration casts doubt on whether that is the case. Teets states, "Macy's does not maintain any records that associate customer identifying information with purchases of individual products. Moreover, Macy's does not have the present ability within its systems to run a report to generate such documents" and would need to "sort, analyze and reconcile voluminous data from different and presently unrelated data sets to cull that information and create a record that does not presently exist in any form." (D.E. 109-8 ¶ 6). The Court cannot divine from Teets's declaration what information is actually contained in any of the systems referenced in paragraph 8, much less whether such information can be used to identify putative class members. Plaintiff fails to explain how the information that Macy's can provide on sales made on credit or debit cards can actually be used to identify who belongs in the putative class. To the contrary, it appears that the information Macy's possesses cannot provide the Court with the identity of putative class members.

As to Lord & Taylor, Plaintiff directs the Court to paragraphs 3 and 17 of Talisic's declaration. Paragraph 3 states that the retailer "does not maintain a database of records that tracks customer-identifying information for all purchases made by its customers. [Lord & Taylor] only collects customer information at points of sales for approximately seventy-four (74%) of its sales." (D.E. 109-8 at 8). Paragraph 17 provides that the retailer "retains certain sales information within its systems for approximately eight years. Information prior to that timespan, is available, if at all, only on backup media . . . and is not reasonably accessible . . . ."

(D.E. 109-8 at 11). Neither of these paragraphs, nor anything in the declaration, describes the information Lord & Taylor maintains following a purchase made with a credit or debit card. Perhaps because Plaintiff does not know the information that will be available from such purchases, Plaintiff does not explain to the Court how it will use information from Lord & Taylor to identify putative class members.

Finally, as to Sephora, Plaintiff directs the Court to paragraphs 11 and 20 of Wayne's Declaration. Paragraph 11 states that "80 to 85 percent of all U.S. in-store purchases from Sephora can be associated with a specific e-mail address." (D.E. 109-8 at 11). However, a fuller reading of the declaration indicates the purchases that can be tied to an email address are those purchases for which the purchaser identifies herself as a Sephora loyalty member. (D.E. 109-8 at 14). Accordingly, these identifiable purchases are relevant to the fourth criteria and do not illuminate how having purchased Body Lift with a credit or debit card would make a putative class member ascertainable. Paragraph 17 states,

> Sephora does not maintain any records that associate customer identifying information with purchases of individual products. Moreover, Sephora does not have the present ability within its systems to run a report to generate such documents. To [do so], Sephora would need to sort, analyze and reconcile voluminous data from different and presently unrelated data sets to cull that information and create a record that does not presently exist in any form.

(D.E 109-8 at 15). While this paragraph indicates it is possible to create a document associating customer identifying information with the purchase of an individual product, this could only be done if Sephora has the underlying customer identifying information in the first place. Yet, this declaration does not indicate that Sephora would have that information for purchases made with

a credit or debit card absent affiliation with Sephora's loyalty program.[4] Again, Plaintiff does not provide the Court with evidence that a credit or debit card purchase from Sephora can lead to the identification of putative class members in an administratively feasible way.

Accordingly, the Court is not satisfied that putative class members can be identified as to purchases made by credit or debit card at the above three retailers, and with such uncertainty, Plaintiff has not carried its burden of demonstrating the putative class would be ascertainable.

### b. Loyalty Club Member

The Court finds the fourth criteria — that the purchaser was a loyalty or rewards member of the retailer from which Body Lift was purchased — is overbroad. This criteria is overbroad because purchasers could be loyalty or rewards members of a retailer and not identify themselves as such (or provide an email address, phone number, or anything else the retailer could use to identify them as loyalty members) at check-out. If loyalty members do not so identify themselves, their status as loyalty members would not be tied to the product purchased. As a hypothetical, if Jill were a Sephora loyalty member, and purchased from Sephora a bottle of Body Lift with cash, without saying anything to the cashier, how could Sephora (or, more to the point, the Court) possibly trace that sale to Jill in an administratively feasible way? Clearly, such tracing would not be possible.

While the Court may be able to construct a narrower class definition that could pass muster under the ascertainability requirement, the Court need not do so when it would be futile. Here, Plaintiff's subjective inclusion in the class definition is inappropriate, and so, she cannot be a class representative. Additionally, as discussed below, the Court finds that typicality is not

---

[4] It appears that Sephora would have some customer information for credit or debit card purchases made online, though this constitutes only 26% of Sephora's recent sales. (*See* D.E. 109-8 at 14).

satisfied as to both claims, and finds that commonality is not satisfied as to the unjust enrichment claim. Accordingly, positing a new class definition would be futile.

### 2) Numerosity

Plaintiff argues she has satisfied the numerosity requirement by submitting Exhibit 2, which provides sales information for Body Lift. Specifically, Plaintiff states Exhibit 2 illustrates that 57,515 bottles of Body Lift were sold in 2013 and 2014, and thus, "[i]t is readily apparent from an even cursory review of its records that more than 40 persons in Florida and nationwide purchased Body Lift. Numerosity is firmly established." (D.E. 124 at 3). Defendants retort that "the evidence shows that not even Ms. Garcia herself meets her criteria and is a member of her own proposed class. How, then, can she conceivably suggest how many others might . . . ." (D.E. 110 at 19).

A putative class meets the numerosity requirement if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'Impracticable' does not mean 'impossible'; plaintiffs need only show that it would be extremely difficult or inconvenient to join all members of the class." *In re HealthSouth Corp. Secs. Litig.*, 213 F.R.D. 447, 457 (N.D. Ala. 2003) (internal quotation marks omitted). While "mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in a class." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). However, "[a] plaintiff must ordinarily demonstrate "some evidence or reasonable estimate of the number of purported class members." *Kuehn v. Cadle Co., Inc.*, 245 F.R.D. 545, 548 (M.D. Fla. 2007). "As a general rule, a group of more than forty satisfies the numerosity requirement of Rule 23, a group of fewer than twenty-one does not, and the numbers in between are subject to judgment based on additional factors." *Collins v. Erin Capital Mgmt., LLC*, 290 F.R.D. 689, 694 (S.D. Fla.

2013). In deciding whether the movant has sufficiently established numerosity, a court may consider a number of factors along with the number of class members, including geographical dispersion of the class members, judicial economy, and the ease of identifying the members of the class and their addresses. *Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 598–99 (S.D. Fla. 1991).

Here, while Plaintiff has not provided an estimated number of putative class members, Plaintiff has provided evidence indicating the Florida Class would consist of at least hundreds of members and the National Class would consist of thousands of members. Specifically, Exhibit 2 is a table with sales data from 2013–2014 about Clarins's products, including Body Lift. This table indicates that in two years, Clarins sold, through its own website, over 268 units of Body Lift in Florida. Even accounting for the possibility of repeat-purchases from individual customers, this figure is sufficient to meet the numerosity requirement, and does not include the class members who maintained proof of purchase for sales made after 2014. The table further indicates that during the same two years, Clarins sold, also through its own website, thousands of units of Body Lift nationwide. Thus, the National Class would have at least several thousand class members. Accordingly, both the Florida Class and the National Class meet the numerosity requirement, as joinder of several hundred class members is clearly impracticable.

### 3) Commonality

Plaintiff claims that commonality is satisfied because there are numerous legal and factual questions that are common to the classes and central to the claims at issue. Namely, Plaintiff states the following questions are common to the classes: (1) whether Clarins's Cellulite Label Claims are sufficiently uniform; (2) whether Clarins's Cellulite Label Claims are false, misleading, or deceptive; (3) whether Clarins's false claims in its marketing of Body Lift were

and are likely to mislead an objective consumer acting reasonably under the circumstances; (4) whether Clarins's marketing activities violated FDUTPA and unjust enrichment laws; and (5) whether Plaintiff and other members of the Florida Class have been damaged and, if so, whether there is a common methodology for measuring those damages.

Defendants argue that Plaintiff has not satisfied the commonality requirement because the dissimilarities within the proposed classes render class treatment improper. Defendants posit that customers purchase Clarins's products for "a host of reasons wholly unrelated to product labeling." (D.E. 110 at 20). Thus, Defendants state that the "critical questions of causation and injury . . . turn on highly individual issues not appropriate for class-wide resolution." (D.E. 110 at 26).

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This commonality requirement "'does not require that all the questions of law and fact raised by the dispute be common,' or that the common questions of law or fact 'predominate' over individual issues." *Vega*, 564 F.3d at 1268 (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986)). Rather, commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart*, 564 U.S. at 349–50 (quoting *Gen. Telephone Co. of SW v. Falcon*, 457 U.S. 147, 157 (1982)). The class claims "must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor"—that "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. In other words, "'[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to

drive the resolution of the litigation.'" *Id.* (quoting Richard Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L. REV. 97, 132 (2009)).

Here, Plaintiff alleges that Clarins advertised that a product would help control, smooth, and firm an individual's cellulite, and further alleges that said product could not reduce or control an individual's cellulite. The Court finds that common questions of law and fact exist as to the FDUTPA claim. The heart of this claim is whether Defendants deceptively advertised that its product would work, that is: whether an objective reasonable consumer would be deceived by Defendants' claims. *See Fitzpatrick v. Gen. Mills, Inc.*, 263 F.R.D. 687 (S.D. Fla. 2010) (finding commonality satisfied in FDUTPA class action alleging deceptive advertisement, where the defendant argued subjective consumers' understanding destroyed commonality. The court stated the defendant could not "evade the unmistakable fact that the objective . . . of its marketing campaign was to present [the product] . . . as a product that . . . aids in the promotion of digestive health" and "each plaintiff seeking damages under the FDUTPA is only required to prove that [the defendant's] conduct would deceive an objective reasonable consumer, and not that the deceptive act motivated their particular purchase."). A determination of this issue would apply equally and objectively to all of the putative Florida Class members. Thus, this issue is capable of classwide resolution as its determination would resolve an issue that is central to the validity of each one of the claims in one stroke.

However, the unjust enrichment claim does not satisfy the commonality prerequisite. In Florida, the elements of a claim for unjust enrichment are: (1) "a benefit conferred upon a defendant by the plaintiff"; (2) "the defendant's appreciation of the benefit"; and (3) "the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Vega*, 564 F.3d at 1274. In *Vega*, the

Eleventh Circuit found that the proposed class lacked commonality as to an unjust enrichment claim because "a court must examine the particular circumstances of an individual case and assure itself that, without a remedy, inequity would result or persist." *Id.* With this necessary individualized inquiry, a claim for unjust enrichment does not lend itself to a classwide proceeding that would generate common *answers* apt to drive the resolution of the litigation. Accordingly, commonality is not satisfied as to the unjust enrichment claim.

### 4) Typicality

Plaintiff contends that typicality is met because her claims "are the same as those giving rise to the other Florida Class members' claims, which arise from the same course of conduct — Clarins's labeling, marketing and advertising of Body Lift." (D.E. 109 at 15). Defendants argue that typicality is not satisfied, *inter alia*, because Plaintiff does not fit within her class definitions, is subject to unique defenses, and does not specifically recall seeing any Body Lift advertisement.[5] (D.E. 110 at 5–7). Plaintiff counters that Plaintiff is expressly included in the class definitions because the "classes are defined objectively to include (1) Ms. Garcia *and* (2) others who purchased Body Lift through various modalities *or* (3) who retained some proof of purchase." (D.E. 124 at 6).

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is satisfied if "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory" and may be satisfied "despite

---

[5] Defendant challenges typicality and adequacy in the same section, making little-to-no effort to distinguish which arguments pertain to typicality, and which pertain to adequacy. The Court recognizes that there is some overlap between both prerequisites, but does not condone Defendants' approach. The Court arranges Defendants' undifferentiated arguments in the appropriate sections, as Defendants should have at least attempted to do.

substantial factual differences . . . when there is a strong similarity of legal theories." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1358 (11th Cir. 2009). However, "[t]he claims and defenses of the class representative would not be typical if [they] would require substantially more or less proof than required for the other members of the class." *Amswiss Int'l Corp. v. Heublein, Inc.*, 69 F.R.D. 663, 667 (N.D. Ga. 1975). "Representative plaintiffs should not be distracted by a relatively unique personal defense." *Id.* (internal quotation marks omitted).

Plaintiff's writing herself into her class definitions is a creative end-around the long-standing rule that "a class representative *must be part of the class* and possess the same interest and suffer the same injury as the class members." *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395 at 403 (1977) (internal quotation marks omitted, emphasis added) (citing cases). Here, while Plaintiff alleges she suffered the same injury as the putative class members, she does not meet the objective criteria in her class definitions.

That Plaintiff does not meet her objective class definition creates a further typicality problem because it means Plaintiff is subject to unique defenses. Namely: Plaintiff is subject to the defense — already raised in the Response — that she did not actually purchase Body Lift, because she cannot proffer any independent record that she purchased the product and her deposition testimony may raise doubts about the veracity of her testimony.[6] To surmount this defense, Plaintiff has provided evidence that she purchased Body Lift: her own testimony she purchased Body Lift and medical records that indicate she told the doctor she used Clarins's

---

[6] For instance, Plaintiff repeatedly states that she purchased Body Lift in January for about $90. However, Body Lift was not available at the alleged purchase location until the last week of February. Additionally, the manufacturers' suggested retail price ("MSRP") for Body Lift in 2013 was $68.00, suggesting the price paid would have likely been closer to $70. The Court notes that Plaintiff's deposition testimony is not fatal to her claim, as people often misremember the date they purchased a product and how much that product cost. However, the testimony highlights the issues surrounding Plaintiff's inability to produce an independent record that she purchased Body Lift.

products. Whether Plaintiff actually purchased the product is not the specific issue here, as she has provided sufficient evidence at this stage for a reasonable fact finder to conclude that she purchased Body Lift. However, the issue is that she is subject to a substantial defense to which the rest of the class members would not realistically be subject, as all putative class members would possess (or be able to acquire) objective evidence they purchased Body Lift, as per the class definitions' objective criteria. To defeat this defense, Plaintiff would need to offer a quantum of evidence significantly broader and different than the rest of the class members. Accordingly, Plaintiff does not satisfy Rule 23(a)(3)'s typicality requirement.

Defendants' arguments concerning the other unique defenses applicable to Plaintiff are unavailing. Defendants argue Plaintiff failed to read and follow Body Lift's instructions. However, Plaintiff has alleged and submitted evidence that Body Lift cannot perform as advertised, regardless of how the product is used. If Plaintiff's expert testimony is believed, then Plaintiff's individual use of the product is irrelevant, because it would not have worked even if used exactly as instructed. Accordingly, Plaintiff's particular use of Body Lift does not make her claims atypical.

Similarly unavailing is Defendants' argument that Plaintiff's claims are atypical because she cannot precisely recall the Body Lift advertisements that she saw. The Court has addressed, and rejected, a similar argument regarding FDUTPA class actions. *See Fitzpatrick*, 263 F.R.D. at 693–95. As the Court stated in *Fitzpatrick*,[7]

---

[7] In *Fitzpatrick*, this analysis was directed towards Rule 23(a)'s commonality requirement, and, arguably, is where this discussion is more properly raised. However, because Defendant raises the issue in the context of the typicality requirement, the Court addresses the matter in this section. The Supreme Court has noted that commonality and typicality often overlap. *See Falcon*, 457 U.S. at 157 n.13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's

> Although the Court agrees that a plaintiff must be exposed to the misrepresentation . . . relied upon in a claim for damages, it is not persuaded that a plaintiff should be forced to rely only on those representations, omissions, or practices experienced firsthand to prove that a defendant engaged in a deceptive act. Applied here, [that] restrictive approach would mean the putative class is disharmonious because each plaintiff was likely exposed to a unique array of advertising statements, and would therefore be forced to rely on a slightly divergent pool of evidence to establish that [Defendant] engaged in the same deceptive act.

263 F.R.D. at 693. As in *Fitzpatrick*, there is "little doubt that each putative class member was exposed, at a minimum, to the alleged misrepresentations common to" Body Lift's packaging, or in instances where the bottle was displayed without the packaging, was exposed at the very least to the product's name and alleged inherent claim of cellulite reduction: "Body Lift Cellulite Control." *Fitzpatrick*, 263 F.R.D. at 693. Accordingly, for the FDUTPA claim, the fact that Plaintiff and the putative class members were exposed to different advertisements or different statements regarding Body Lift's effect on cellulite does not defeat typicality where, as here, Plaintiff and the putative class were all exposed to the same allegedly deceptive behavior: stating or implying that Body Lift helps firm and control cellulite.

Defendants do not specifically address whether Plaintiff's unjust enrichment claim is typical of putative Florida Class members' claims or the putative National Class members' claims. However, because the Court must undertake its own rigorous analysis to ensure that Rule 23's requirements have been satisfied, the Court addresses a typicality concern regarding unjust enrichment. The Court noted, *supra*, the three elements of a claim for unjust enrichment under Florida law. As discussed above, the third element requires that a court "examine the particular circumstances of an individual case and assure itself that, without a remedy, inequity would

---

claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.").

18

result or persist." *Vega*, 564 F.3d at 1274. Such inquiry would include, under the facts alleged, whether each putative class member was aware that Body Lift could not reduce the amount of cellulite a person has (as opposed to temporarily reducing the appearance of that cellulite). If a putative class member did not expect an actual physical reduction in his or her cellulite, then the product's inability to produce that result would not be a basis for a claim for unjust enrichment. Accordingly, Plaintiff's claim for unjust enrichment would not be typical of the claims of those putative class members who had different expectations of the product than did Plaintiff. *See id.* at 1276–77 (typicality not satisfied when subjective understanding of each class member is relevant to the claims and defenses at hand, and this was "particularly true on the unjust enrichment claim, where such individualized facts concerning each employee's knowledge . . . will delineate the equities in a given case").

### 5) Adequacy of Representation

Plaintiff claims she will adequately represent the putative classes because her interests are aligned with all class members, as she and all putative class members will benefit if the action is successful, and because she has proven to be proactive and diligent in her duties as class representative. Additionally, Plaintiff argues her counsel is competent and experienced in complex class action litigation, and, further, has demonstrated they will continue to devote significant resources to this litigation. Defendants counter that Plaintiff is not an adequate representative because "Plaintiff does not understand, and has demonstrated an unwillingness or inability to perform, her duties as a putative class representative" and because "Plaintiff knows very little about her case and has exerted almost no effort to learn." (D.E. 110 at 7–8). Defendants also argue that Plaintiff's "demonstrably false—or, viewed charitably, mistaken—

testimony" concerning her Body Lift purchase makes her an inadequate class representative. (D.E. 110 at 5–6).

Rule 23(a)'s final prerequisite is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This prerequisite has been interpreted as having two distinct components: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co.*, 350 F.3d at 1189. The latter component "is primarily based on 'the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the . . . class.'" *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1254 (11th Cir. 2003) (quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987)). While the above requirements are necessary to a finding of adequacy, a named plaintiff must also "possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative.'" *Id.* (quoting *Kirkpatrick*, 827 F.2d at 726). These adequacy requirements apply not just to Plaintiff, but also to her counsel. *See id.* at 1253. Notwithstanding the above, "'[i]t is well-settled that it is not necessary for named class representatives to be knowledgeable, intelligent or have a firm understanding of the legal or factual basis on which the case rests in order to maintain a class action.'" *Muzuco v. ReSubmitIt, LLC*, 297 F.R.D. 504, 517 (S.D. Fla. 2013) (quoting *Powers v. Gov't Employees Ins. Co.*, 192 F.R.D. 313, 317–18 (S.D. Fla. 1998)).

The Court does not find any substantial conflict of interest between Plaintiff and the putative class. Additionally, based on all the evidence submitted, the Court finds that Plaintiff would adequately prosecute this action. As to the latter adequacy component, Defendants have parsed Plaintiff's deposition testimony and referenced select portions thereof to support their

argument that Plaintiff does not understand the nature of the lawsuit and the class action. However, a broader reading of Plaintiff's deposition testimony reveals she has sufficient knowledge of the matter at hand to satisfy Rule 23(a)(4)'s adequacy requirement. Specifically, Plaintiff states that she believes that Defendants have falsely advertised the efficacy of the products at issue in this action (including the one product at issue in the class-related allegations). (*See* D.E. 105 at 6, 29). Plaintiff's deposition testimony further reveals Plaintiff's belief that the products at issue do not work at all. (D.E. 105 at 29). Additionally, Plaintiff is aware that this is a class action lawsuit and that there are "so many women that were complaining about the efficacy of the product." (D.E. 105 at 6). Plaintiff appeared at her deposition, spoke with counsel in preparation of said deposition, responded to discovery, is familiar with the complaint (even if Plaintiff did not thoroughly read the entire complaint), and has produced records for this action. While Plaintiff may not fully comprehend the legal elements of her causes of action or how many class members can partake in a class action, this is not fatal to Plaintiff's adequacy of representation, nor is the fact that she did not know the exact amount of damages sought in this case.[8] *See Muzuco*, 297 F.R.D. at 517.

As to Plaintiff's character, Defendants seem to imply that Plaintiff does not have sufficient integrity to be a class representative, suggesting that Plaintiff never actually purchased Body Lift. As basis for these implications, Defendants use the facts that Plaintiff, in her deposition testimony, was mistaken by at least three-to-four weeks regarding the date she purchased Body Lift, and that Plaintiff was likely mistaken by around $20.00 regarding the

---

[8] Plaintiff's deposition testimony reveals Plaintiff firstly wants an apology from Clarins to the consumers of the relevant products, and that Plaintiff has not discussed actual compensation with her attorneys and states compensation for the plaintiffs (which the Court interprets as being a reference to herself and the putative class) would be up to her attorneys. (*See* Pl.'s Depo. 210–11).

amount for which she purchased the product. In her deposition, Plaintiff repeatedly states she purchased Body Lift in January, 2013. Defendants have provided evidence that the product only became available at the alleged purchase location the week of February 23, 2013. (*See* D.E. 115-3 ¶ 23). Plaintiff also alleges she purchased Body Lift for $90.00, but Defendants have provided evidence that the MSRP for Body Lift in 2013 was $68.00, and that "[a]lmost all sales of 'Body Lift' at department stores are made at or near the MSRP." (D.E. 115-3 ¶ 32). However, it would hardly be unreasonable for Plaintiff to be mistaken by a month or two regarding the date she purchased a product, when that alleged purchase occurred more than two-and-a-half years prior to Plaintiff's deposition.[9] It would similarly not be unreasonable for Plaintiff to be mistaken (if indeed she was mistaken and the retailer did not simply charge an amount greater than the MSRP) about the amount paid for a purchase that happened long before her deposition. Accordingly, the Court does not find that these discrepancies tarnish Plaintiff's integrity. Viewing all the evidence submitted, the Court finds that Plaintiff possesses the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative.

Furthermore, while Defendants do not appear to challenge the adequacy of Plaintiff's counsel, the Court must undertake its own rigorous analysis on the subject. Carella, Byrne, P.C.,

---

[9] Plaintiff's Reply states that Plaintiff "would have informed Clarins at her deposition that her purchase of Body Lift may very well have been in March 2013, if she had been shown documentary evidence of the date product [*sic*] was available for sale at the Macy's in the Dadeland Mall." (D.E. 124 at 7). Defendant argues this statement indicates that Plaintiff "is ready to say whatever it takes to attempt to squeeze into the confines of her own class definition" and cites to cases in which a plaintiff's willingness to give intentionally false testimony makes that plaintiff an inappropriate class representative. (D.E. 123 at 2). The Court does not read Plaintiff's statement as an indication that Plaintiff is willing to provide false testimony, rather, the Court finds this statement simply reflects that Plaintiff would have realized she was mistaken about the date she purchased Body Lift. But again, the questions surrounding Plaintiff's purchase of Body Lift highlight the typicality problems presented by Plaintiff's failure to meet her own class definition, i.e., her inability to produce objective proof of purchase or meet her class definitions' objective criteria.

Bern Ripka LLP, and Gelber Schachter & Greenberg, P.A., are law firms experienced in class action litigation, have committed significant resources to this litigation, and have indicated they are willing to continue to do so. (D.E. 109-9; 109 at 23). The Court is satisfied that Plaintiff's counsel is adequate.

Although Plaintiff satisfied the numerosity, commonality (only as to the FDUTPA claim), and adequacy requirements of Rule 23(a), because the classes are not ascertainable and because Plaintiff's claims are not typical of the putative classes she seeks to represent, the Court must deny class certification for failure to satisfy Rule 23(a). As the Court finds that Plaintiff does not satisfy Rule 23(a), the Court need not engage in a discussion of Rule 23(b)(3)'s more demanding requirements.

**B.  Jurisdiction**

Although the parties have not raised the issue of whether the Court retains jurisdiction over this CAFA putative class action upon denial of the motion for class certification, "it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Ala. v. Am. Tobacco*, 168 F.3d 405, 410 (11th Cir. 1999). Accordingly, the Court addresses whether it retains subject matter jurisdiction over this action, and concludes it does not.

The Eleventh Circuit has provided conflicting guidance on whether a court maintains subject matter jurisdiction over a CAFA class action after a court has denied class certification. *Compare Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 862 (11th Cir. 2012) ("We affirm the dismissal on the grounds that absent certification as a class action, the district court lacks subject matter jurisdiction over Walewksi's individual claim.") *with Vega*, 564 F.3d at 1268 n.12 (11th Cir. 2009) (stating in dicta that "jurisdictional facts are assessed at the time of removal and

post-removal events (including non-certification, decertification, or severance) do not deprive federal courts of subject matter jurisdiction").[10]

Courts within this District that have addressed this issue at one point took different approaches regarding whether to dismiss CAFA class actions for lack of subject matter jurisdiction upon denial of class certification. *Compare Clausnitzer v. Fed. Exp. Corp.*, 621 F. Supp. 2d 1266, 1270 (S.D. Fla. 2008) (holding the court lacked subject matter jurisdiction over CAFA class action when the court denied class certification) *with Colomar v. Mercy Hosp., Inc.*, No. 05-22409-CIV-SEITZ, 2007 WL 2083562, at *2–3 (S.D. Fla. July 20, 2007) (noting there was no direct circuit authority on point, but stating that "case developments subsequent to removal do not alter the Courts' CAFA jurisdiction"). However, since *Clausnitzer*, this District's precedent calls for dismissal for lack of subject matter jurisdiction after denial of a motion for class certification. *See In re Motions to Certify Classes Against Court Reporting Firms*, 715 F. Supp. 2d 1265, 1284–85 (S.D. Fla. 2010) (dismissing case for lack of subject matter jurisdiction, stating that "the Court's decision not to certify the proposed classes eliminates § 1332(d) as a source of jurisdiction"), *aff'd*, 439 F. App'x 849 (11th Cir. 2011); *Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 688 (S.D. Fla. 2008) ("[G]iven that the Court has declined to certify the class in this [CAFA class] action, jurisdiction of this action may not be predicated upon 28 U.S.C.A. § 1332(d)(2).") *Karhu v. Vital Parma., Inc.*, No. 13-60768-CIV, 2014 WL 1274119, at *2–4 (S.D. Fla. Mar. 27, 2014) (holding that, upon the court's denial of class certification, the court lacked subject matter jurisdiction over CAFA putative class action); *Orginsky v. Paragon Props. of Costa Rica, LLC.*, 282 F.R.D.  681, 684 n.5 (S.D. Fla. 2012)

---

[10] As *Walewski* is unpublished, and the pertinent text of *Vega* is dicta, neither is binding on the Court. *See Gelfound v. Metlife Ins. Co. of Connecticut*, 313 F.R.D. 674, 680 (S.D. Fla. 2016) (discussing both Eleventh Circuit statements on whether a court retains jurisdiction over a CAFA class action).

(same) ("The Court notes, upon denial of class certification, that it likely does not have subject matter jurisdiction over the various state law claims where diversity is lacking."); *Carroll v. Lowes Home Centers, Inc.*, No. 12-23996-CIV, 2014 WL 1928669, at *9–10 (S.D. Fla. May 6, 2014) (stating that after class certification was denied, "it appears subject matter jurisdiction is lacking" and ordering the parties to show cause why the action should not be remanded; ultimately dismissing case in subsequent order).

The express language of 28 U.S.C. § 1332(d) indicates subsection 1332(d) should not be used to confer subject matter jurisdiction after a court has denied a motion for class certification. Specifically, § 1332(d)(8) states, "This subsection [(d)] shall apply to any class action before or after the entry of a class certification order by the court with respect to that action." The subsection specifically defines the term "class certification order" to mean "an order issued by a court *approving* the treatment of some or all aspects of a civil action as a class action." 28 U.S.C. § 1132(d)(1)(C) (emphasis added). Reading subsections (d)(8) and (d)(1)(C) together, it appears that § 1332(d) does not apply when the court enters an order *denying* class certification.

Thus, the Court concludes that § 1332(d) does not provide a jurisdictional basis for this action to be in federal court now that the Court has denied the Motion for class certification. Furthermore, Plaintiff has neither pleaded facts sufficient to show that she meets the traditional diversity jurisdiction requirements of § 1332(a), nor has Plaintiff alleged that she meets such requirements. The Court also ascertains no federal question alleged in the complaint. Finding no basis upon which the Court may exercise subject matter jurisdiction over this action, the Court must dismiss the case.

## IV.    CONCLUSION

Based on the foregoing, the Motion for Class Certification [D.E. 101] is **DENIED**.

Because the Court's denial of the Motion divests the Court of subject matter jurisdiction, the case

is **DISMISSED**. The case is **CLOSED** and all pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers, Miami, Florida, this 27th day of July, 2016.

Paul C. Huck
United States District Judge

Copies furnished to:
All counsel of record.